# IN THE COURT OF APPEALS OF IOWA

No. 15-1362
Filed October 28, 2015

**IN THE INTEREST OF J.G. and Z.F.,**
        **Minor Children,**

**A.F., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Hancock County, Karen Kaufman

Salic, District Associate Judge.


        A mother appeals from a juvenile court order terminating her parental

rights.  **AFFIRMED.**


        Michael Moeller of Sorensen Law Office, Clear Lake, for appellant.

        Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, and David Solheim, County Attorney, for appellee.

        Crystal Ely of Young Law Office, Mason City, for father.

        Theodore Hovda, Garner, attorney and guardian ad litem for minor

children.


        Considered by Doyle, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother appeals from a juvenile court order terminating her parental rights to her two children under Iowa Code section 232.116(1)(f) and (*l*) (2015).[1] The mother argues the State failed to prove the grounds for termination by clear and convincing evidence and, alternatively, the court should have granted her an additional six months toward reunification. She also contends termination is not in the children's best interests under section 232.116(2) and a statutory exception existed under section 232.116(3)(c) to prevent termination. She further claims the juvenile court erred in finding the Iowa Department of Human Services (DHS) made reasonable efforts toward reunification. We affirm.

## I.      Background Facts and Proceedings

The mother has two children, J.G., born in September 2003, and Z.F., born in December 2006. The DHS first became involved with the family in 2006, when J.G. was two years old. DHS provided voluntary services to the mother and J.G. for six months. DHS again became involved with the family in early August 2013 because of concerns regarding the mother's substance abuse when both she and Z.F., then six years old, tested positive for methamphetamine. The mother participated in voluntary services, and the children remained in her care and custody even after the mother tested positive for THC in November 2013 and methamphetamine in December 2013. In February 2014, the children were removed from their mother's care due to her ongoing methamphetamine use and

---

[1] The parental rights of J.G.'s biological father were terminated pursuant to Iowa Code section 232.116(1)(b), (e), and (f). He does not appeal. The court further ordered that guardianship of J.G., and her care, custody, and control were transferred to Z.F.'s father, her step-father, and she was placed in his home along with Z.F.

an incident in which Z.F., then age seven, was found walking alone around town after 10:00 p.m. After the removal hearing, the mother entered into an inpatient substance abuse treatment program for methamphetamine use. She successfully completed the inpatient treatment program in March 2014.

In March 2014, the children were adjudicated children in need of assistance (CINA),[2] and the court placed the children in the care and custody of Z.F.'s father.[3] The court held a dispositional hearing in April 2014. During that time, the mother was in an outpatient treatment program and consistently met with her counselors for individual and group sessions though she continued to abuse alcohol and prescription medication.

---

[2] At one point in its adjudicatory order, the juvenile court stated it dismissed the allegations under Iowa Code section 232.2(6)(c)(2) and (n) without prejudice based upon a motion by the State. But at all other points in the adjudicatory order and in subsequent orders, the court found the parties admitted the allegations of the petition as to Iowa Code section 232.2(6)(n) and adjudicated the children as children in need of assistance pursuant to paragraph (n). Thus, we determine that the dismissal of the allegations under paragraph (n) was a scrivener's error. The mother neither argues nor cites authority in support of a claim that the error prejudiced her in any way. In fact, she notes in her petition that the children were adjudicated under section 232.2(6)(n) after randomly noting earlier in her petition that the allegations were dismissed. We therefore consider any issue as to adjudication under section 232.2(6)(n) waived. Iowa R. Civ. P. 6.903(2)(g)(3); *see also Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 689 (Iowa 1994) (holding that random mention of an issue, without citing authority or offering substantive argument to support the claim, is insufficient to raise issue for appellate court's consideration).

[3] The mother and father of Z.F. were separated prior to DHS's involvement but reunited shortly after DHS became involved. The parents attempted marital counseling, but the father left the family home in December 2013. The children continued in the mother's care and custody following this separation, thus requiring a removal order to place Z.F. in his father's care. J.G.'s biological father's location was unknown at the time of removal from the mother. Therefore, a removal order was required to place J.G. in her stepfather's care. The removal hearing was originally scheduled for February 2014, but was waived by the parties and held in conjunction with the adjudication hearing in March 2014.

At the review hearing in August 2014, the mother's visitation had been increased to seven hours per week and the court approved semi-supervised visits to start by September. She was participating in substance abuse treatment, consistently engaging with her counselors, was employed, and had had negative drug screens since late April 2014. However, by the November 2014 review hearing, there were concerns regarding the mother's attendance in treatment and her failure to appear for a hair stat test. She had also lost her employment.

In January 2015, the juvenile court held a permanency hearing at which it granted the mother an additional six months to work toward reunification with her children. At the time, the mother was living with her grandparents on their farm because her home was in foreclosure. She had a new job. Her visits with the children had been increased to unsupervised visits every other weekend in addition to visits during the week, but the court ordered that her visitation not be expanded further until she verified her sobriety. In late January 2015, the mother tested positive for methamphetamine. The mother again participated in an inpatient substance abuse treatment program, but was unsuccessfully discharged in February 2015 due to increased methamphetamine use and lack of attendance. As a result of her ongoing substance abuse issues, as well as her housing situation and involvement in a relationship with a man who had a history of drug-related criminal activities, the mother's visits returned to being fully supervised. The mother was convicted of driving while suspended in March, and

failed to inform her providers of the conviction, the revocation of her driving privileges, or her arrest for failure to appear.

In April 2015, the court held a permanency review hearing. The mother stated she consistently attended Narcotics Anonymous meetings and spoke with her sponsor daily. She was still living with her grandparents and had another new job. In May 2015, the mother again tested positive for methamphetamine. The State then filed a petition to terminate the mother's parental rights to her two children. The mother knew she needed help and obtained two more substance abuse evaluations. She entered treatment, but was again unsuccessfully discharged in June 2015 after having no contact with the agency. After the second evaluation, the mother attended two group sessions and one individual session. She participated in partial-day intensive outpatient services and later full-day services until she could be admitted to inpatient services. A space opened for her for inpatient services, and she stated she would enter but never entered and later claimed she did not know she was going into inpatient. The mother continued to use methamphetamine weekly and was homeless and unemployed.

In July 2015, the juvenile court held a termination-of-parental-rights hearing. At the time, the mother had visits with her children for two hours once a week. The DHS worker testified that the visits went well, the mother had a strong bond with her children, and there had never been any issues with her parenting skills during visits. However, the mother had not attempted to contact the children outside of her visits with them and did not inquire about their well-being.

She admitted she was using methamphetamine and that she had not made progress in addressing her addiction since February 2014. She also testified that because of her substance abuse issues, she knew her children could not safely be returned to her care but requested an additional six months to get clean and work toward reunification with her children. She had unresolved mental health issues and had been off medication since April. She continued to be involved in inappropriate relationships. She was again living with her grandfather and supporting herself by using her savings, selling some of her household belongings, and receiving food assistance. Following the hearing, the juvenile court entered an order terminating the mother's parental rights under Iowa Code section 232.116(1)(f) and (*l*). This appeal followed.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interests of the child. *Id.* at 776.

## III.    Analysis

### A. Statutory Grounds

The juvenile court terminated the mother's parental rights to J.G. and Z.F. under Iowa Code section 232.116(1)(f) and (*l*). When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791

N.W.2d 703, 707 (Iowa 2010).  Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence.  *Id.* at 706.

The mother argues the State failed to prove the grounds for termination by clear and convincing evidence.[4]  Specifically, she asserts that the State failed to prove that the children could not be returned to her care at the time of the termination hearing.  She alternatively contends the juvenile court should have granted her an additional six months toward reunification with her children.

Under section 232.116(1)(f), the court may terminate parental rights if the court finds that the State has proved by clear and convincing evidence the child (1) is four years old or older; (2) has been adjudicated CINA; (3) has been removed from the parent's physical custody "for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days"; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

There is no dispute that both J.G. and Z.F. are over the age of four.  The juvenile court adjudicated both children CINA in March 2014.  Both children have been out of the mother's physical care and custody since February 2014 and have had no trial periods at home.  The mother testified at the termination hearing that the children could not be returned to her care at that time because of her methamphetamine addiction.  The mother testified that she last used

---

[4] The mother argues the State failed to prove the grounds for termination under Iowa Code section 232.116(1)(h).  However, this is apparently a typographical error because the juvenile court terminated her parental rights under paragraphs (f) and (*l*).  We will therefore examine the mother's claim with respect to paragraph (f).

methamphetamine in early July, a few weeks before the termination hearing. When asked if she believed her children were safe in her care, she testified that she knew she needed help and requested additional time to work toward reunification. The mother did not have stable housing or employment. She had unresolved mental health issues and required medication management. For these reasons, we find clear and convincing evidence that J.G. and Z.F. could not be returned to the care and custody of their mother at the time of the termination hearing and grounds for termination exist under Iowa Code section 232.116(1)(f).

Furthermore, the mother is not entitled to an additional six months because she has not proved that the need for removal will no longer exist at the end of that six-month period. *See* Iowa Code § 232.104(2)(b). The mother's minimal progress in addressing her methamphetamine addiction since the CINA case was opened and the children were removed from her care and custody indicate that another six months will only postpone the permanency and stability these children need. We cannot ask these children to continuously wait for their mother to become a stable parent. *In re D.W.*, 791 N.W.2d at 707. "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Therefore, we affirm the juvenile court's denial of an additional six months.

*B. Best Interests*

Next, the mother contends that termination of her parental rights was not in the children's best interests as defined in section 232.116(2). Even if a

statutory ground for termination is met, a decision to terminate must still be in the best interests of the child after a review of section 232.116(2). *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010).

We have thoroughly reviewed the record before us "giv[ing] primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d at 777 (quoting *In re P.L.*, 778 N.W.2d at 41).

The mother claims the State failed to present evidence that the mother was using illegal substances while caring for the children and that the mother never put the children in a situation that would likely lead to their imminent abuse or neglect. She claims the children would be safe in her care. Although she consistently visited her children, appropriately cared for them during visits, and exhibited good parenting skills, she has put her children in dangerous situations before. She testified at the termination hearing that it would not be safe for the children to be returned to her care full time. DHS became involved with this family in August 2013 because Z.F. tested positive for methamphetamine when he was six years old. The children were removed from their mother's care in February 2014, in part because Z.F., at age seven, was found walking the streets of town alone after 10:00 p.m. The mother has experienced unstable

employment and housing. "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d at 778 (internal quotation marks omitted). The children were doing well in their father's care and appeared to be happy and their needs were being met. Thus upon our de novo review of the record, we conclude that termination of the mother's parental rights is in the children's best interests.

The mother also claims it is in the children's best interests to maintain their relationships with the mother's extended family—namely her grandparents with whom she lived at different points throughout this case. The State argues the mother failed to raise this issue before the juvenile court and therefore error was not preserved. We apply our standard error preservation rules to termination-of-parental-rights cases. *See In re A.B.*, 815 N.W.2d at 773. "Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal." *In re K.C.*, 660 N.W.2d 29, 38 (Iowa 2003). The mother did not raise and the juvenile court did not rule upon the issue of separation of the children from their maternal grandparents. Therefore, she has not preserved error for appellate review. *See* Iowa R. Civ. P. 1.904(2), *see also In re A.B.*, 815 N.W.2d at 773.

*C. Exceptions or Factors Against Termination*

The mother asserts that an exception under section 232.116(3) applies because "[t]here is clear and convincing evidence that the termination would be

detrimental to the child[ren] at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

A court need not terminate parental rights if it finds any of the statutory exceptions under section 232.116(3) apply. *In re P.L.*, 778 N.W.2d at 39. "The factors weighing against termination in section 232.116(3) are permissive, not mandatory, and the court may use its discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re A.M.*, 843 N.W.2d at 113 (internal quotation marks omitted).

Although the mother shares a strong bond with her children, who love her in return, we agree with the juvenile court when it found that "[g]iven the depth and length of Mother's substance abuse issues, and the ramifications her addiction and mental health issues have had on her life, it is more detrimental to the children to continue a legal relationship with her than it is to terminate parental rights." Accordingly, we find that none of the permissive factors weigh against termination of the mother's parental rights.

*D. Reasonable Efforts*

The mother also argues the State failed to prove by clear and convincing evidence that reasonable efforts toward reunification have been made. Specifically, the mother claims that she was unable to gain stability and trust with her service providers because her providers changed frequently. She also complains that she did not receive any trial periods at home despite having successful overnight weekend visits.

Following removal of a child from a parent's care and custody, the State must make reasonable efforts to reunify the family as quickly as possible. Iowa Code § 232.102(7); *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Reasonable efforts are not, however, a "strict substantive requirement of termination." *In re C.B.*, 611 N.W.2d at 493. Although the State has an obligation to provide reasonable services, the parent has an obligation to demand different or additional services the parent may require prior to the termination hearing. *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999).

Here, the mother did not raise these issues regarding reasonable efforts until closing arguments during the termination hearing when counsel made an oral motion for a finding of lack of reasonable efforts. Because the mother did not make her requests prior to the termination hearing, the argument that DHS did not make reasonable efforts is waived. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002).

## IV.     Conclusion

On our de novo review, we find clear and convincing evidence supporting termination of the mother's parental rights and affirm under Iowa Code section 232.116(1)(f). The juvenile court did not err in denying the mother an additional six months to work toward reunification. We further find termination is in the best interests of J.G. and Z.F. and none of the permissive factors weigh against termination of the mother's parental rights. Therefore, we affirm the juvenile court's ruling terminating the mother's parental rights to her two children.

**AFFIRMED.**